UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARKLYN BAY COMPANY, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LIBERTY INSURANCE CORPORATION,<br><br>　　　　Defendant.<br>_____/ | No. C-13-3124 EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket Nos. 56, 60)** |

## I.   BACKGROUND

Plaintiff Parklyn Bay Company brought this insurance coverage action against Defendant Liberty Surplus Insurance Corporation in 2013. Docket No. 1. Parklyn Bay paid $100,000 for a Commercial General Liability policy (the Policy) from Liberty to cover a major construction project at the apartment building at 1800 Pacific Avenue in San Francisco, owned by Parklyn Bay. *See* Docket No. 58-2, Ex. E (Policy) at 108.[1] Liberty concedes that Parklyn Bay's contractor on the construction project, Oliver and Co. (Oliver), was an additional insured under the Policy. Docket No. 60 (Opposition) at 1 n.1.

In June 2012, Parklyn Bay tenants Bradford Duncan and Clark Carrol (the Tenants) filed suit against Parklyn Bay in San Francisco Superior Court (the *Duncan* Action). *See* Docket No. 58-2, Ex. A (*Duncan* Complaint). The *Duncan* complaint contained ten causes of action, but at the heart of the action were allegations that Parklyn Bay and its contractor, Oliver, had knowingly or

---

[1] Because the documents in the record do not always have consistent pagination, the Court cites to the ECF page number generated on the document header.

negligently exposed the Tenants to asbestos during the construction project. *See, e.g.*, *Duncan* Complaint at ¶ 11 (alleging that Parklyn Bay "willfully and fraudulently concealed and failed to and refused to disclose to plaintiffs . . . that there was asbestos in the building"); *Id.* at ¶ 30 (alleging that Parklyn Bay failed to disclose the presence of asbestos in the building "for the purpose of avoiding the costs associated with properly removing asbestos containing materials from the property"). As will be discussed in more detail below, however, the *Duncan* action also involved allegations that were not obviously related to asbestos, such as the following allegation in paragraph 18 of the complaint: "During the time that plaintiffs were out of their unit, defendants and/or workers employed by defendants made multiple entries into the Premises without prior notice, and without the consent of plaintiffs." *Id.* at ¶ 18. The complaint also alleged that when "defendants began demolition of the unit directly above plaintiffs' unit [it caused] large quantities of dust, debris, and *unknown* contaminants to enter into plaintiffs' unit." *Id.* at ¶ 15 (emphasis added). In its answer to the complaint, Parklyn Bay denied all of the Tenants' allegations, including the allegation that the building contained asbestos. *See* Answer at 1-2.

    Parklyn Bay tendered its defense of the *Duncan* action to Liberty and a number of its other insurers. Parklyn Bay specifically tendered to Liberty on March 20, 2013. Docket Nos. 66 and 67. On May 8, 2013, Liberty "outright denied coverage and defense" of the *Duncan* action. Docket No. 47 (SAC) at ¶ 9; *see also* Docket No. 58-1, Ex. 2 (Denial Letter). According to Liberty, it denied all coverage pursuant to an asbestos exclusion in the Policy after concluding that "[a]ll allegations in the [*Duncan*] Complaint arise out of and relate to asbestos being present in the location of the alleged loss." Denial Letter at 22. On June 10, 2013, Parklyn Bay filed a cross-complaint in the *Duncan* action against contractor Oliver for, *inter alia*, indemnity and breach of contract if Parklyn Bay was held liable to the Tenants. Docket No. 58-2, Ex. C (Oliver Cross-Complaint). In its cross-complaint against Oliver, Parklyn Bay expressly incorporated by reference all of the allegations made in the Tenants' complaint against it in the *Duncan* action. *See id.* at ¶ 20. Oliver then tendered its defense of Parklyn Bay's cross-complaint to Liberty, which tender Liberty denied on August 9, 2013; once again Liberty cited the asbestos exclusion as the reason for denying all coverage (as it had in denying coverage to Parklyn Bay). Docket No. 58-1, Ex. 3. Liberty refused

2

1  to defend either Parklyn Bay or Oliver.  Parklyn Bay eventually settled the *Duncan* action with the
2  Tenants as well as its cross-complaint against Oliver.  *See* Docket No. 56 at 11.  In the settlement of
3  Parklyn Bay's cross-complaint, Parklyn Bay "took assignment of Oliver & Co.['s] contract and bad
4  faith rights against Liberty."  *Id.*  Hence, in the case at bar, Parklyn Bay sues under its rights as well
5  as those of Oliver.

6  Now pending before the Court is Parklyn Bay's motion for partial summary judgment that
7  Liberty owed a duty to defend both Parklyn Bay and Oliver in the *Duncan* action.  Docket No. 56.
8  Liberty filed a combined opposition and cross-motion for summary judgment, seeking summary
9  judgment in its favor that it did not have a duty to defend either Parklyn Bay or Oliver & Co.[2]
10 Docket No. 60.

11 For the reasons explained below, Parklyn Bay's motion for partial summary judgment is
12 **GRANTED**, and Defendant's cross-motion for summary judgment is **DENIED**.  In short, an
13 "insurer owes a broad duty to defend its insured against claims that create a *potential* for indemnity."
14 *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993) (emphasis added) (citing *Gray v.*
15 *Zurich Ins. Co.*, 65 Cal. 2d 263 (1966)).  Because the allegations in the *Duncan* complaint clearly
16 created a "potential for indemnity" not excludable under any policy term, Liberty had a duty to
17 defend both Parklyn Bay and Oliver.

18 **II.   DISCUSSION**

19 A.  Applicable Legal Standards

20 1.  Summary Judgment

21 The court may grant summary judgment "if the movant shows that there is no genuine
22 dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R.

---

[2] Liberty also sought summary judgment in its favor on a number of other issues not directly responsive to Parklyn Bay's partial summary judgment motion, such as a determination that Liberty "does not owe any equitable obligation to Century [another of Parklyn Bay's insurers], or obligation to reimburse Parklyn Bay for rights assigned to it by Century," and had no duty to indemnify either Parklyn Bay or Oliver.  *See* Docket No. 60-1.  Liberty does not actually make arguments (or cite evidence) in support of these requests in their papers.  Instead, Liberty argues that because it owed Parklyn Bay or Oliver no duty to defend, it necessarily could not have any other liability to either party. Because the Court concludes that Liberty *did* have a duty to defend, the Court denies the remainder of its cross-motion without prejudice.

3

Civ. P. 56(a). The court must view the evidence, and draw all reasonable inferences therefrom, "in the light most favorable to the nonmoving party." *Cameron v. Craig*, 713 F.3d 1012, 1018 (9th Cir. 2013). An issue of fact is material if it has the potential to "affect the outcome of the case." *Kasperzyk v. Shetler Sec. Servs., Inc.*, No. C-13-3358 EMC/TEH, 2015 WL 1348503, at *6 (N.D. Cal. Mar. 25, 2015) (citations omitted).

### 2. Duty to Defend

"It is by now a familiar principle that a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Horace Mann Ins. Co.*, 4 Cal. 4th at 1081 (citation omitted). The Supreme Court has squarely held that a "'carrier must defend a suit which *potentially* seeks damages within the coverage of the policy.'" *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993) (emphasis in original) (quoting *Gray*, 65 Cal. 2d at 275); in *Gray*, 65 Cal. 2d at 276 n.15, the Court explained that an "insurer need not defend if the third party complaint can by *no conceivable theory raise a single issue* which could bring it within the policy coverage." (emphasis added). Because "an insurer has a duty to defend the *entire* third party action if any claim encompassed within it potentially may be covered," the Court does not look "to whether noncovered acts predominate in the third party's action, but rather to whether there is *any* potential liability under the policy." *Horace Mann Ins.*, 4 Cal. 4th at 1084 (first emphasis added, second emphasis in original).

"The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Montrose*, 6 Cal. 4th at 295; *see also State Farm Mutual Auto. Ins. Co. v. Flynt*, 17 Cal. App. 3d 538, 548 (1971) (holding that "the duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources"). "The defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded or until it has been shown that there is *no* potential for coverage . . . ." *Montrose*, 6 Cal. 4th at 295 (emphasis in original) (citations omitted). Importantly, "[a]ny doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Id.* at 299-300. Thus, to prevail in a lawsuit against an insurer alleging a breach of the duty to defend, "the insured must prove the existence of a

*potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within the policy coverage; the insurer must prove that it *cannot*." *Id.* at 300 (emphases in original). If the insurer is not entitled to summary judgment that there was no duty to defend, "the duty to defend is then *established*." *Horace Mann Ins.*, 4 Cal. 4th at 1085 (emphasis in original) (citation omitted). As with any summary judgment motion, the insurer must prove the absence of any possibility of coverage by reference solely to undisputed facts (and in light of all reasonable inference drawn in the insured's favor) in order to establish that it owed no duty to defend. *Id.*; *see also Borg v. Transamerica Ins. Co.*, 47 Cal. App. 4th 448, 455 (1996).

B.    <u>Liberty Had a Duty to Defend</u>

As the above legal principles make clear, the test for an insured to prove that it was owed a duty to defend is extremely lenient. *Cf. Anthem Electronics, Inc. v. Pac. Emp'rs Ins. Co.*, 302 F.3d 1049, 1056 (9th Cir. 2002) (explaining that "insurers have a heavy burden when seeking summary judgment on the duty to defend"). Perhaps for this reason, the California Supreme Court has advised insurers that "to avoid any possibility that a refusal to defend may subject it to eventual liability for bad faith, the insurer is well advised to seek a judicial determination that it owes no defense" *before* it refuses to defend a tendered claim. *Montrose*, 6 Cal. 4th at 301. Liberty did not heed the Supreme Court's wisdom. As explained below, this was a mistake.

1.    <u>Paragraph 18</u>

Parklyn Bay argues that Liberty owed it (and Oliver by way of the incorporation of all of the *Duncan* complaint's allegations into Parklyn Bay's cross-complaint) a duty to defend based solely on the allegations at paragraph 18 of the *Duncan* complaint. Parklyn Bay is correct, and this argument is fully dispositive of its partial summary judgment motion. Paragraph 18 alleges in its entirety:

> During the time that plaintiffs were out of their unit, defendants and/or workers employed by defendants made *multiple entries* into the Premises without prior notice, and without consent of plaintiffs.

*Duncan* Complaint at ¶ 18 (emphasis added).  The fifth cause of action in the *Duncan* complaint, which realleges and incorporates therein "the allegations of paragraphs 1-27 above," is for "Breach of Quiet Enjoyment – Tort." *Id.* at ¶¶ 48-51.

The Policy expressly states that Liberty "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies," and further states that Liberty "will have the right and duty to defend the insured against any 'suit' seeking those damages."  Policy at 116.  The Policy defines "personal and advertising injury" as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses: . . . (c) The wrongful eviction from, *wrongful entry into, or invasion of the right of private occupancy or a room*, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor . . . ."  Policy at 127 (emphasis added).  Quite plainly, the allegations in Paragraph 18--that Parklyn Bay or its employees made "multiple entries" into the Tenants' apartment without prior notice or consent--raise at least the "potential for coverage" under the "personal and advertising injury" Policy provision; that provision expressly covers injuries "arising out of . . . [the] wrongful entry into, or invasion of the right of private occupancy or a room."  Policy at 127.

Liberty's response in opposition to the above reasoning is without merit.  According to Liberty, the allegations of paragraph 18 are not even *potentially* covered under the Policy because of the Policy's asbestos exclusion.  *See* Docket No. 63 (Suppl. Br.); *see also see Horace Mann Ins.*, 4 Cal. 4th at 1084.  That exclusion provides that Liberty will not cover any "'personal and advertising injury' arising out of or related in any way, either directly or indirectly, to:

> (a) asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust, including, but not limited to, manufacture, mining, use, sale, installation, removal, or distribution activities;
>
> (b) exposure to, testing for, monitoring of, cleaning up, removing, containing or treating asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust; or
>
> (c) any obligation to investigate, settle or defend, or indemnify any person against any claim or suit arising out of, or related in any way, either directly or indirectly, to asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust."

6

Docket No. 58-3 at 7. Liberty argues that the asbestos exclusion applies to exclude coverage for the allegations in paragraph 18 of the *Duncan* complaint even though that paragraph makes no reference to asbestos, and thus states a cause of action whether or not there was asbestos. Specifically, Liberty claims the exclusion applies because the *reason* Parklyn Bay and its employees allegedly made multiple entries into the Tenants' apartment without notice or consent was "to abate the asbestos." Suppl. Br. at 4. This argument must be rejected for a number of reasons. First and foremost, there is absolutely no allegation anywhere in the *Duncan* complaint that states that Parklyn Bay or its contractors from Oliver and Co. repeatedly entered the Tenants' apartment without permission in order to abate asbestos. And as noted above, the allegations of paragraph 18 would otherwise seem to be expressly covered under the Policy's provision regarding "personal and advertising injury" because a cause of action for wrongful entry may lie even in the absence of asbestos.

Liberty argues, however, that Parklyn Bay has admitted that the wrongful entries described in paragraph 18 of the *Duncan* complaint were in fact related to asbestos removal, and thus properly excluded under the asbestos exclusion, citing as "admissions" certain allegations Parklyn Bay first made in its September 28, 2012, cross-complaint against the Tenants. *See* Suppl. Br. at 3-4. This argument too suffers from multiple flaws. First, the Court has doubts that the motivation explaining why Parklyn Bay committed the putative tort of wrongful entry is material. It is not a necessary element to the legal claim. To be sure, the asbestos exclusion is broad and purports to cover any injury "related in any way" to "testing for, monitoring of, cleaning up, [or] removing" asbestos. Docket No. 58-3 at 7. Yet, it may be argued that tortious conduct not reasonably foreseeable or necessary to such abatement efforts is not sufficiently related thereto to fall within the exclusion. In any event, even if the exclusion could apply in such circumstance, Liberty's argument is factually baseless.

Liberty has not submitted any evidence establishing when it actually learned of the alleged "admissions" contained in Parklyn Bay's cross-complaint or elsewhere. This is fatal to its argument because the "duty to defend is not only broad, but immediate." *Wausau Underwriters Ins. Co. v. Unigard Sec. Ins. Co.*, 68 Cal. App. 4th 1030, 1037 (1998). Thus, Liberty's duty to defend arose when Parklyn Bay and Oliver tendered the various lawsuits to it that contained the paragraph 18

7

allegations that are potentially covered under the Policy. And while "[f]acts known to the insurer at the time of tender, even if extrinsic to the third party complaint, can . . . defeat the duty to defend," here Liberty has not established (or even attempted to establish) that it had knowledge of the alleged admissions at the time it received either tender (*i.e.*, when its duty to defend otherwise arose). *Id.* (citing *Montrose*, 6 Cal. 4th at 295-99).

Moreover, the allegations in Parklyn Bay's various cross-complaints that Liberty now claims are "admissions" that Parklyn Bay entered the Tenants' unit to abate asbestos are not, in fact, such admissions. Liberty points specifically to paragraphs 8-12 of Parklyn Bay's cross-complaint against the Tenants. Notably, in paragraph 8 of the cross-complaint, Parklyn Bay claims that it first became aware of the "*alleged potential* asbestos problem" on June 23, 2011; this is not a factual admission that asbestos was actually present in the unit. Docket No. 58-2, Ex. B (Tenant Cross-Complaint) at ¶ 8 (emphasis added); *see also* Parklyn Bay's Answer at 1-2 (denying all allegations in *Duncan* complaint, including the presence of asbestos). The cross-complaint then goes on to state that beginning around June 24, 2011, Parklyn Bay "retained an industrial hygienist" and gave "*notice to enter* the premises on June 27th to begin addressing the issue." Tenant Cross-Complaint at ¶ 9 (emphasis added). According to Parklyn Bay, however, the tenants "repeatedly and *wrongfully refused and failed to allow Parklyn Bay and its agents entry* to the Premises to address and abate the asbestos issue."[3] *Id.* at ¶ 11 (emphasis added). Indeed, Parklyn Bay asserted that despite its "continued . . . efforts to address and abate the asbestos issues in the Premises," the Tenants refused to allow entry to their apartment and thus Parklyn Bay "could not properly address and abate the asbestos issue until about January 13, 2012." *Id.* We know that January 13, 2012 falls outside the period of time referenced in Paragraph 18, because Paragraph 18 alleges that all of the wrongful entries occurred when the Tenants were "out of their unit," and the complaint later alleges that the Tenants moved back in to their unit on January 13, 2012. *See Id.* at ¶¶ 18-19.[4]

---

[3] Parklyn Bay's use of the term "asbestos *issue*" in its cross-complaints further indicates that it was not conceding that there actually was asbestos in the Tenants' unit.

[4] Furthermore, the Policy expired in August 2011, and so any entry to abate asbestos on or after January 13, 2012 would not be covered under the Policy in any event. *See* Policy at 108. Hence, any such entry is not at issue herein.

8

Liberty's contention that Parklyn Bay has conceded that the "multiple [unauthorized] entries"[5] alleged in paragraph 18 of the *Duncan* complaint for the purpose of abating asbestos is simply not accurate. Parklyn Bay's cross-complaint alleges that the tenants "repeatedly and wrongfully *refused* and *failed to allow* Parklyn Bay and its agents entry to the Premises to address and abate the asbestos issues." Tenant Cross-Complaint at ¶ 11 (emphases added). Liberty argued at the hearing on this matter that Parklyn Bay admitted that it did make at least one entry into the Tenants' unit related to asbestos abatement. Again, Liberty did not present evidence regarding when it learned this information. In any event, it would not change the outcome here. The *Duncan* complaint alleged that Parklyn Bay or Oliver made "multiple entries" into the unit. Thus, even if one such entry could properly be excluded under the asbestos exclusion, Liberty has not established that there was no potential for coverage for the other alleged entries. Parklyn Bay is therefore entitled to summary judgment regarding Liberty's duty to defend. *See Wausau*, 68 Cal. App. 4th at 1037; *Montrose*, 6 Cal. 4th at 295.

2. Paragraphs 15 & 16

There is an additional independent and adequate ground on which to grant Plaintiff's motion for partial summary judgment. In the *Duncan* action, the Tenants alleged that they were forced to "flee" their apartment at least in part because Parklyn Bay's/Oliver's "demolition of the unit directly above plaintiffs' unit caus[ed] large quantities of dust, debris, and *unknown* contaminants to enter into plaintiffs' unit," which invasion "continued for several days." *Duncan* Complaint at ¶ 15 (emphasis added); *see also id.* at ¶ 16. Liberty argues that it had no duty to defend against these allegations because they would be excluded under the asbestos exclusion. But Liberty would only be entitled to summary judgment on this basis if there was *undisputed* evidence in the record that the "dust, debris, and [other] unknown contaminants" that entered the Tenants' unit actually contained asbestos.[6] *See Horace Mann Ins.*, 4 Cal. 4th at 1085. Indeed, the Tenants did not even squarely

---

[5] *See also* Docket No. 58-4 at 64-65 (Tenants' interrogatory answers alleging at least seven separate unauthorized entries into their unit that occurred after July 1, 2011).

[6] Moreover, and as noted above, to show that it never had a duty to defend either Parklyn Bay or Oliver because of the asbestos exclusion, Liberty would have needed to prove that it was undisputed *at the time the defenses were tendered* to it that the contaminants from the apartment

*allege* that the contaminants that entered their apartment from the unit above contained asbestos, and that fact has not been established beyond dispute. And even if the Tenants had alleged that the contamination from the unit above contained asbestos, the California Supreme Court has repeatedly rejected arguments from insurance companies that simply because a complaint squarely alleges conduct that would clearly fall within a policy exclusion, the duty to defend is not triggered. As the Court noted in *Gray*:

> Defendant cannot construct a formal fortress of the third party's pleadings and retreat behind its walls. . . . To restrict the defense obligation of the insurer to the precise language of the pleading would not only ignore the thrust of the cases but would create an anomaly for the insured. . . [T]he complainant in the third party action drafts his complaint in the broadest terms; he may very well stretch the action which lies in only nonintentional conduct to the dramatic complaint that alleges intentional misconduct. In light of the likely overstatement of the complaint and of the plasticity of modern pleading, we should hardly designate the third party as the arbiter of the policy's coverage.

*Gray*, 65 Cal. 2d at 276. Thus in *Gray*, the Supreme Court held that even though the third-party complaint alleged that the insured acted "wilfully, maliciously, brutally, and intentionally" – which conduct would be excluded from indemnity under the policy – the duty to defend was triggered because the mere possibility of a judgment based on nonintentional conduct entailed a duty to defend. *Id.*

The Supreme Court ruled similarly decades later in *Horace Mann*, explaining once more that the duty to defend attaches even where the complaint alleges conduct that, if proven, would not be covered under the policy. As the Court explained in finding that the duty to defend attached in a case where the insured was accused in the underlying action of multiple acts of intentional sexual molestation:

> If the parties to a declaratory relief action [reasonably] dispute whether the insured's alleged misconduct should be viewed as essentially a part of a proven sexual molestation, or instead as independent of it and so potentially within the policy coverage, then factual issues exist precluding summary judgment in the insurer's favor. Indeed, the duty to defend is then *established*. Here, the parties disputed not only whether the acts alleged to be harassment constituted part of the

---

above contained asbestos.

10

>[already proved] molestation, but also whether those acts actually occurred. The latter dispute implicates the insurer's duty to defend groundless claims.

*Horace Mann*, 4 Cal. 4th at 1085 (emphasis in original) (internal citation omitted); *see also id.* at 1086 (explaining that an insurer has an obligation to "defend the insured against groundless, false, and fraudulent claims"). Thus, while an insurer has a duty to defend where, in essence, a *lesser* included offense may fall within the coverage, certainly where, as here, the allegations on their face do not allege the contaminant invasion included asbestos, the insurer cannot use a *greater* included offense as a means of excluding coverage.

Nor would the allegations at paragraphs 15 and 16 of the *Duncan* complaint necessarily be excluded under the Policy's "Total Pollution" exclusion, as Liberty contends. Once again, Liberty has not presented any undisputed evidence regarding what the precise contaminants were that entered the apartment. *Compare MacKinnon v. Truck Ins. Exchange*, 31 Cal. 4th 635, 653-54 (2003) (holding that the "residential application of pesticides" does not come within the scope of the pollution exclusion, because the exclusion should be limited to injuries arising from events commonly thought of as "conventional environmental pollution") *with Cold Creek Compost, Inc. v. State Farm Fire and Casualty Co.*, 156 Cal. App. 4th 1469, 1486 (2007) (holding that ordinary dust can qualify as pollutant under certain circumstances where the dust is widely enough dispersed). Thus, it cannot show that these unknown contaminants would necessarily fall under the pollution exclusion, and hence cannot show that there was no possibility of coverage.

Nor is Liberty correct in its contention that the dust and debris that entered from the apartment above cannot constitute an "occurrence" under the Policy.[7] The Policy defines an "occurrence" as "an accident"; there is no allegation, let alone undisputed evidence in the record, that the conduct alleged at paragraphs 15 and 16 was anything but accidental. *See, e.g.*, *State Farm General Ins. Co. v. Frake*, 197 Cal. App. 4th 568, 580 (2011) (noting that "an accident may exist when any aspect in the causal series of events leading to the injury or damage was unintended by the

---

[7] This argument only applies to Coverage A under the Policy--there is no "occurrence" requirement for coverage under Coverage B, which includes the "personal and advertising injury" coverage discussed above. *See* Policy at 111-17.

11

insured and a matter of fortuity") (citations omitted); *see also Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 751 (1993) (explaining that merely because "an expected or intended act [occurred] at any point in the causal chain of events [does not mean] that any resulting damage was not caused by accident"). Moreover, it may reasonably be inferred the incident was sufficiently sudden to constitute an occurrence. *See, e.g.*, *Quan v. Truck Ins. Exchange*, 67 Cal. App. 4th 583, 595-96 (1998).

Liberty further argues it had no duty to defend against the *Duncan* complaint because its Policy provided only excess insurance, citing to Endorsement No. 6 of the Policy, which states that "[i]f other valid and collectable insurance is available to any insured for a loss we cover then this insurance is excess of such insurance and we will have no duty to defend any claim or 'suit' that any other insurer has a duty to defend." Docket No. 58-3 at 17. Liberty argues that Parklyn Bay had primary insurance through a different insurance carrier, Century, and thus it had no duty to defend pursuant to the "other insurance" clause of Endorsement 6. Liberty is incorrect.

In order to resolve Liberty's argument, it is first important to understand the distinction between primary and excess insurance. As the Court of Appeal explained:

> Primary coverage is insurance coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to the liability. Primary insurers generally have the primary duty of defense. Excess or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted.

*Century Surety Co. v. United Pac. Ins. Co.*, 109 Cal. App. 4th 1246, 1255 (2003) (internal alterations omitted). Liberty does not attempt to argue that its coverage was secondary or excess *as defined above*--indeed, a quick review of the Policy language indicates that the insurance was primary in that liability attached immediately, without regard to whether policy limits in other insurance policies had previously been reached. This is important, because the Court of Appeal has held that very same "other insurance" clause Liberty seeks to invoke here is not enforceable under California law in these exact circumstances. Specifically, the *Century Surety* court held that an identical "other insurance" clause to Liberty's was unenforceable "[w]hen two or more applicable [primary] policies contain such clauses." *Century Surety*, 109 Cal. App. 4th at 1256. Here, the Century insurance

12

policy Liberty contends is primary itself contains an "other insurance" clause that purports to render it excess to any other policy, including the Liberty policy. *See* Docket No. 58-3 at 96. In such circumstances, the Court of Appeal explained that neither "other insurance" clause can be enforced:

> When two or more applicable policies contain ["excess only" or "other insurance"] clauses, both liability and the costs of defense should ordinarily be prorated according to the amount of coverage afforded. The reason for this rule is that the conflicting provisions are deemed essentially irreconcilable; if given effect competing clauses would strand an insured between insurers disclaiming coverage in a manner reminiscent of Alphonse and Gaston.

*Century Surety*, 109 Cal. App. 4th at 1256. In *Dart Industries, Inc. v. Commercial Union Ins. Co.*, 28 Cal. 4th 1059, 1080 (2002), the California Supreme Court explained that public policy "disfavors" other insurance clauses "whereby coverage purports to evaporate in the presence of other insurance," and noted that the "modern trend is to require equitable contributions on a pro rata basis from all primary insurers regardless of the type of 'other insurance' clause in their policies." Thus, Liberty's "other insurance" argument fails because (1) it has not conclusively established that the Century policy was actually primary so that the Policy's "other insurance" endorsement would even apply, and (2) if the Century policy was actually primary, the Century policy also had an "other insurance" clause and thus *neither* clause would be enforced.

In conclusion, Liberty has made no valid argument that is was not obligated to defend Parklyn Bay and Oliver and Co.

### III. CONCLUSION

Parklyn Bay's motion for partial summary judgment is granted, and Liberty's cross-motion is denied. At a minimum, Liberty had a duty to defend both Parklyn Bay and Oliver against the allegations in paragraph 18 of the *Duncan* complaint. As an independent and adequate ground in support of this Court's summary judgment ruling, the Court further holds that Liberty also had

///
///
///
///

a duty to defend Parklyn Bay and Oliver against the allegations in paragraphs 15-16 of the *Duncan* complaint.

This order disposes of Docket Nos. 56 and 60.

IT IS SO ORDERED.

Dated: August 12, 2015

_____
EDWARD M. CHEN
United States District Judge